**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PLATFORM REAL ESTATE INC., <br><br> *Plaintiff*, <br><br> -*v*- <br><br> UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br> *Defendant*. | Case No. 19-CV-2575 <br><br> **COMPLAINT** |

Plaintiff Platform Real Estate Inc. ("Platform Real Estate"), by its undersigned counsel, brings this Complaint against the United States Securities and Exchange Commission (the "SEC") and states as follows:

<u>SUMMARY OF ACTION</u>

1.      Platform Real Estate brings this action for a judgment declaring that Section 15(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(a) ("Section 15(a)") means what it says, namely that only those persons using securities exchange facilities or trading securities over the counter for clients must undertake the onerous requirements to register as brokers and be subject to SEC and other regulations.  Platform Real Estate, which seeks nothing more than to raise capital for various business ventures unrelated to the securities industry in the United States and without making use of either securities exchanges or over-the-counter trading, should not be required to register as a broker under Section 15(a) to do so.

2.      This is a case of statutory interpretation.  Section 15(a), read as a whole and in light of its legislative framework, relates to the registration of brokers involved in securities traded on securities exchanges or in over-the-counter markets.  It does not require finders of private capital, such as Platform Real Estate, who help raise funds for business ventures in transactions that do not involve such securities, to register as brokers.

3.      The SEC nonetheless has taken the position that Section 15(a) requires persons assisting in the purchase or sale of **any** shares—even shares in a private business transferred via a private contract—to register as brokers, regardless of how they are sold (and brings legal action against them when they do not).  That position has resulted in a patchwork regulatory scheme under which soliciting capital for some industries is unregulated while soliciting capital for other industries by doing the same thing—trying to connect those who have capital with those who need it, for the benefit of both sides—will subject a finder to SEC regulation and potential enforcement action.

4.      The SEC's misinterpretation of Section 15(a) has placed Platform Real Estate in the position of not being able to move forward with its business unless it registers as a broker—something that, in Platform Real Estate's view, the law does not require—or otherwise run the risk that the SEC will bring an enforcement action against it.

5.      The Court should enter a declaration that finders such as Platform Real Estate are not required to register as a broker under Section 15(a).

## THE PARTIES

**A.      Platform Real Estate.**

6.      Platform Real Estate is a New York business corporation with its principal business office in Queens County, New York.

**B.      The SEC.**

7.      The SEC is an agency of the United States government, headquartered in Washington, D.C., with a regional office within this district in New York County, New York.

## JURISDICTION AND VENUE

8.      This action is filed pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*. (the "Declaratory Judgment Act") and Federal Rule of Civil Procedure 57.

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 1651 and 2201.

10.     Venue is proper in this district pursuant to 28 U.S.C § 1391(b) and (e).

## FACTS

**A.     Platform Real Estate's Business.**

11.     Platform Real Estate plans to act as a finder to raise capital for various business ventures in the United States and receive compensation for such services without registering as a broker under Section 15(a).  The business ventures typically will be organized as corporations or partnerships with shareholder or partnership agreements.  Domestic or international investors may contribute capital to the business ventures as shareholders or limited partners without active management functions.

12.     The private placement transactions in which Platform Real Estate plans to assist will be conducted through arms-length negotiations between startup companies in the real estate, manufacturing, food service, and related industries and investors.  Platform Real Estate will participate in the negotiations between the issuer and the investor.  These will be transactions in primary issuances; there likely will be no secondary market for these securities.  The equity interests that investors will receive for the investments are "securities," as that term is defined in the Securities Act of 1933, 15 U.S.C. § 77b (a)(1).

13.     Investors for these private placements typically will be sophisticated high net worth individuals or entrepreneurs who can afford and appreciate the business risks of investing in startup companies (accredited investors as that term is defined by Regulation D Rule 501 [17 C.F.R. § 230.501]).

14.     The offering price of these investments typically will be fixed, and not subject to fluctuations due to speculation or manipulation.  Platform Real Estate likely will be paid a

modest percentage of the capital raised as compensation for its services.  There is little

resemblance between these private placement transactions and the secondary trading transactions

done through securities exchanges or over-the-counter markets.

**B.**     **The Securities Exchange Act and Section 15(a).**

      **1.**     **The Purpose of the Act.**

15.     15 U.S.C. § 78b – Necessity for regulation, outlines what Congress intended the

SEC to regulate when it enacted the Securities Exchange Act:

> For the reasons hereinafter enumerated, transactions in securities as commonly conducted upon securities exchanges and over-the-counter markets are effected with a national public interest which makes it necessary to provide for regulation and control of such transactions and of practices and matters related thereto, including transactions by officers, directors, and principal security holders, to require appropriate reports, to remove impediments to and perfect the mechanisms of a national market system for securities and a national system for the clearance and settlement of securities transactions and the safeguarding of securities and funds related thereto, and to impose requirements necessary to make such regulation and control reasonably complete and effective, in order to protect interstate commerce, the national credit, the Federal taxing power, to protect and make more effective the national banking system and Federal Reserve System, and to insure the maintenance of fair and honest markets in such transactions:

15 U.S.C. § 78b.

16.     More specifically, Congress enacted the Securities Exchange Act to regulate

transactions that:

- "are carried on in large volume by the public generally";

- "in large part originate outside the States in which the exchanges and over-the-counter markets are located and/or are effected by means of the mails and instrumentalities of interstate commerce";

- "constitute an important part of the current of interstate commerce";

- "involve in large part the securities of issuers engaged in interstate commerce"; and

- "involve the use of credit, directly affect the financing of trade, industry, and transportation in interstate commerce, and directly affect and influence the volume of interstate commerce; and affect the national credit."

15 U.S.C. § 78b(1).

17.     Further, the Securities Exchange Act was intended to regulate transactions where:

"[t]he prices established and offered . . . are generally disseminated and quoted throughout the United States and foreign countries and constitute a basis for determining and establishing the prices at which securities are bought and sold . . ."

15 U.S.C. § 78b(2).

**2.      Registration of Brokers.**

18.     Section 15(a) provides:

(a) Registration of all persons **utilizing exchange facilities to effect transactions**; exemptions

(1) It shall be unlawful for any broker or dealer which is either a person other than a natural person or a natural person not associated with a broker or dealer which is a person other than a natural person (other than such a broker or dealer whose business is exclusively intrastate and who does not make use of any facility of a national securities exchange) to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) unless such broker or dealer is registered in accordance with subsection (b) of this section.

15 U.S.C. § 78o (emphasis added).

19.     A "broker" is a "person engaged in the business of effecting transactions in securities for the account of others."  15 U.S.C. § 78c(a)(4)(A).  Given the current state of the law as interpreted and enforced by the SEC, Platform Real Estate believes that if it were to carry out its business plan described above, the SEC would consider it to be a broker that must register under Section 15(a).  Platform Real Estate believes that the SEC has misinterpreted Section 15(a) and brings this action to correct this error.

20.     Registering with the SEC as a broker places a heavy burden on small businesses. Initially, registration with the SEC requires filing an application Form BD together with a statement of financial condition.  Once registered, a broker-dealer is required to have audited

financial statements, engage compliance personnel and sophisticated counsel, comply with

specific record keeping provisions, anti-money laundering statutes, suspicious transaction

reporting, and undergo burdensome compliance examinations by various regulators.  Broker-

dealers are subject to rigorous net worth and capital requirements or make large security deposits

with clearing firms.  Persons associated with a broker-dealer must prepare for and pass Financial

Industry Regulatory Authority, Inc. ("FINRA") exams.

> **3.**    **The SEC's Interpretation of Section 15(a).**

21.     The SEC has interpreted Section 15(a) to apply even to finders who have no

connection to exchanges or the over-the-counter market.  However, the SEC's application of this

interpretation is based on an ad hoc approach that results in uneven and inconsistent

enforcement.

22.     For example, an individual who found investors seeking to become members of a

private association created to apply for and hold FCC-licensed spectrum bandwidth was held in

violation of Section 15(a), even though the private memberships sold bore no connection to any

exchange or over-the-counter market.  *See Securities and Exchange Commission v. Janus*

*Spectrum LLC et al.*, No. 15-cv-00609 (D. Ariz. 2015).

23.     Likewise, the SEC brought an enforcement action based upon the failure of a law

firm to register as a broker under Section 15(a) based upon the law firm's receipt of transaction-

based compensation for referring clients, immigrants seeking EB-5 visas, to qualifying private

investments.  *See Securities and Exchange Commission v. Steve Qi, et al.*, No. 2:17-cv-08856

(C.D. Ca. 2017).

24.     Similarly, the SEC enforced Section 15(a) against an insurance and retirement

planner who recommended and assisted in the sale of notes for an issuer and received

transaction-based compensation in the form of commissions of a percentage of the amounts invested.  *See In re Gregory J. Smith*, SEC Rel. No. 34-80083.

25.     By contrast, an "M&A Broker"—a person engaged in the business of effecting securities transactions in connection with the transfer of ownership and control of a privately-held company through the exchange of securities of the company, to a buyer that will actively operate the company—is not subject to the registration requirement.  *See Five Attorneys Representing M&A Brokers*, SEC No-Action Letter (issued Jan. 31, 2014, revised Feb. 4, 2014), available at: https://www.sec.gov/divisions/marketreg/mr-noaction/2014/ma-brokers-013114.pdf.

26.     Entire industries operate along the same framework, equally distant from any exchange or over-the-counter market, and face no prospect of SEC regulation.  Consider the following examples:

- ABC's hit show, *Shark Tank*, connects young companies seeking investment with potential angel investors willing to buy a share in their success.  In its early stages, the show took a 2% equity stake in the companies for its brokering services and was never subject to SEC regulation.

- A technology incubator solicits investments and uses those investments to provide office space, business development, accounting, and human resources support to development-stage companies in exchange for a negotiated share in those companies.

- The manager of a pharmaceutical distributor lacking the capital to secure a valuable "Authorized Distributor" designation from a major pharmaceutical company solicits investments in exchange for ownership interests of the wholesaler, to satisfy capital requirements and obtain Authorized Distributor status.

- A hedge fund uses an intermediary and compensates them to recommend the hedge fund to an institutional investor.

C.     **Platform Real Estate Does Not Have to Register as a Broker Because it is Engaging only in the Primary Market for Securities That Are Not Traded on an Exchange or Over the Counter.**

27.     Section 15(a) does not require Platform Real Estate to register as a broker.

28.     The purpose of the Act—as both its name makes clear and 15 U.S.C. § 78b explains—is to regulate securities exchanges and the over-the-counter market.  Platform Real Estate will not be involved in those markets.

29.     Nor will Platform Real Estate engage in the types of transactions that the Securities Exchange Act was enacted to regulate.  It does not intend to engage in transactions that "are carried on in large volume by the public generally," 15 U.S.C. § 78b(1).  The transactions in which Platform Real Estate intends to engage will not take place on an exchange or in an established market that will "constitute a basis for determining and establishing the prices at which securities are bought and sold . . . ."  15 U.S.C. § 78b(2).

30.     The first sentence of Section 15(a) makes explicit Congress's intention that the Section 15(a)'s registration requirement applies only to "persons utilizing exchange facilities to effect transactions . . . ."  15 U.S.C. § 78o.  To be sure, it also says that a broker "which is either a person other than a natural person or a natural person not associated with a broker or dealer which is a person other than a natural person" must, with exceptions not applicable here, register unless that broker's "business is exclusively intrastate and who does not make use of any facility of a national securities exchange."  *Id.*  However, that clause merely recognizes, as it must, that Congress has no jurisdiction over intrastate securities transactions that do not affect interstate commerce.  Read in light of the first sentence of Section 15(a) and Congress's intentions in creating the Securities Exchange Act, the natural interpretation is that Platform Real Estate does not have to register as a broker because it will be engaged in transactions (even if interstate) that are not transacted over an exchange or in the over-the-counter market.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment 28 U.S.C. § 2201)

31.     Platform Real Estate incorporates the allegations contained in paragraphs 1 – 30 above as though fully set forth herein.

32.     A dispute exists regarding whether finders such as Platform Real Estate are required to register as brokers under Section 15(a).

33.     The dispute is ripe.  The SEC has brought an action against some categories of finders for failing to register as brokers under Section 15(a).  Platform Real Estate is prepared to enter into business as a finder as described above and thus faces the choice of registering as a broker—an act Platform Real Estate believes Section 15(a) does not require—or to face an action by the SEC for failing to register—an action Platform Real Estate believes Section 15(a) does not give the SEC the authority to take.

34.     Platform Real Estate should not be forced to choose among abandoning its business plan, complying with the obligations of registering as a broker, and starting its business without registering and facing a lawsuit by the SEC—including penalties and other sanctions if the Court disagrees with Platform Real Estate's interpretation of Section 15(a).

35.     Platform Real Estate has no adequate remedy at law to resolve this dispute over the scope of Section 15(a), and, absent a declaratory judgment of this Court, will be damaged by being forced to abandon its business plan, undertake the burdensome registration requirements, or face an enforcement action (and potential sanctions) by the SEC.

36.     Platform Real Estate respectfully requests that the Court issue a judgment declaring, finding and determining that finders in private placement transactions such as Platform Real Estate are not required by Section 15(a) to register as brokers.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment 28 U.S.C. § 2201)

37.     Platform Real Estate incorporates the allegations contained in paragraphs 1 – 36 above as though fully set forth herein.

38.     A dispute exists regarding whether finders such as Platform Real Estate are required to register as brokers under Section 15(a).

39.     The dispute is ripe.  The SEC has pursued enforcement actions against some categories of finders for failing to register as brokers under Section 15(a).  Platform Real Estate is prepared to enter into business as a finder as described above and thus faces the choice of registering as a broker—an act Platform Real Estate believes Section 15(a) does not require—or to face an action by the SEC for failing to register—an action Platform Real Estate believes Section 15(a) does not give the SEC the authority to take.

40.     Platform Real Estate should not be forced to choose among abandoning its business plan, complying with the obligations of registering as a broker, and starting its business without registering and facing a lawsuit by the SEC—including penalties and other sanctions if the Court disagrees with Platform Real Estate's interpretation of Section 15(a).

41.     Platform Real Estate has no adequate remedy at law to resolve this dispute over the scope of Section 15(a), and, absent a declaratory judgment of this Court, will be damaged by being forced to abandon its business plan, undertake the burdensome registration requirements, or face an enforcement action (and potential sanctions) by the SEC.

42.     Platform Real Estate respectfully requests that the Court issue a judgment declaring, finding and determining that Platform Real Estate is not required by Section 15(a) to register as a broker.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Platform Real Estate requests that this Court grant the following relief:

1.     declaring the rights and other legal relations of Platform Real Estate, to wit, that Platform Real Estate and finders with similar business models are not required by Section 15(a) to register as a broker;

2.      entry of an order awarding Platform Real Estate such other relief as this Court

deems just and proper.

 Dated: March 22, 2019
            New York, New York

                                        **SCHLAM STONE & DOLAN LLP**


                                        By:    /s/John M. Lundin
                                               John M. Lundin
                                               Erik S. Groothuis
                                               Peter J. Sluka
                                               26 Broadway
                                               New York, New York 10004
                                               Telephone:  (212) 344-5400
                                               Facsimile:  (212) 344-7677
                                               E-mail:  jlundin@schlamstone.com
                                               egroothuis@schlamstone.com
                                               psluka@schlamstone.com

                                               *Attorneys for Plaintiff Platform Real Estate, Inc.*